# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. TAMMIE ROBINSON,<br><br>        Plaintiff,<br><br>v.<br><br>1. ST. JOHN MEDICAL CENTER, INC.<br>2. ST. JOHN HEALTH SYSTEM, INC.<br><br>        Defendants. | Case No. 12-CV-109-JHP-FHM |

## AMENDED COMPLAINT

**COMES NOW THE PLAINTIFF** and, pursuant to leave of Court, hereby amends her claims as follows:

## PARTIES

1. The Plaintiff is Tammie Robinson, an adult female resident of Tulsa County, Oklahoma.

2. The Defendants are:

   a. St. John Medical Center, Inc. ("Defendant Medical Center"), a company doing business in Tulsa County, Oklahoma; and

   b. St. John Health System, Inc. ("Defendant Health System", a domestic corporation doing business in Tulsa County, Oklahoma.

## JURISDICTION AND VENUE

3. Plaintiff's causes of action are for race discrimination in the form of a failure to promote and termination in violation of Title VII of the Civil Rights Act, the Oklahoma Anti-Discrimination Act, and race discrimination and retaliation after Plaintiff complained of discrimination and retaliation in violation of 42 U.S.C. § 1981 and Oklahoma's clearly established public policy. Plaintiff also asserts a public policy claim for retaliation after Plaintiff complained of inadequate medical care

-1-

given to a patient. Such public policy is set out in Oklahoma statutes and regulations, including the Oklahoma Nursing Practice Act, 59 Okl. St. §§567.1, 567.3a, 567.8,§ 567.9, *inter alia*. Jurisdiction over the federal claims is provided under 28 U.S.C. § 1331. The state law claims arise out of the same core set of facts and jurisdiction is vested over those claims by 42 U.S.C. § 2000e-5(f), 28 U.S.C. § 1367(c). All of the actions complained of occurred in or near Tulsa County, Oklahoma and the Defendants may be served in that county. Tulsa County is within the United States District Court for the Western District of Oklahoma, wherefore venue is proper in this Court under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b).

## STATEMENT OF FACT

4. Each Defendant has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year and is a covered employer under Title VII. There is no minimum employee requirement to be liable for race discrimination and/or retaliation under 42 U.S.C. § 1981 or Oklahoma's public policy.

5. Plaintiff's W-2 forms reflect Defendant Medical Center as her employer. Plaintiff's pay stubs reflect Defendant Health System as her employer. To Plaintiff's knowledge both Defendants controlled personnel decisions related to the Plaintiff and had decision making authority regarding Plaintiff's employment and termination. Defendant Health System produced and distributed the employee policies utilized by Defendant Medical Center. For these reasons Defendant Health System and Defendant Medical Center constitute an integrated enterprise or joint employer such that both are liable for the claims herein.

6. Plaintiff is an adult African American (black) female.

7. Plaintiff was employed by the Defendant on multiple occasions. The most recent term of employment began around December 2008.

8. Around early summer 2010 Plaintiff applied for the position of Wound Care Nurse IV. At the time Plaintiff held the position of RN Care Coordinator III. The position sought by the Plaintiff was considered a promotion in terms title and pay.

9. Plaintiff held the minimum qualifications necessary for the position, including having the necessary experience.

10. Plaintiff was interviewed for the position by Reggie Ripple (white) and Dawn Raska (white).

11. Plaintiff was denied the position. Rather, the position was given to Teresa Rose (white), a person with less experience than the Plaintiff. Further, Ms. Rose did not have the certification required for the position.

12. Around November 2010 Plaintiff transferred to the position of RN Case Manager.

13. Thereafter Plaintiff's supervisor became Sammie Valenzuela (white).

14. Around February 2011 Janet Nowlan (white), a Wound Care Nurse, made racially derogatory comments about black women, including Plaintiff, being loud.

15. Within a day or so of Ms. Nowlan's racial comment, Plaintiff complained to Sammie Valenzuela, Case Director, of the racial comment. Ms. Valenzuela appeared to be angry at the Plaintiff and told Plaintiff to "forget everything [Ms. Nowlan] said."

16. Around March 4, 2011 an African American patient was admitted for treatment of Sickle Cell Anemia.

17. Plaintiff was the only black nurse and none of the physicians were black.

18. Plaintiff observed the patient in significant pain and was concerned with Defendant's lack of treatment of the patient. Plaintiff reported her concerns to Defendant's resident physicians, including her concern that the patient was not being given the minimum required treatment.

19. In response, one resident physician replied that the patient did not "warm our

hearts", indicating to Plaintiff that Defendant was conditioning treatment on the ability of the patient to warm their hearts.

20. Plaintiff also complained to her supervisor, Ms. Valenzuela, that the patient was not being provided necessary medical treatment and that the Defendant was ignoring the patient's medical condition and medical needs.

21. Ms. Valenzuela appeared to be angry with Plaintiff for complaining and told Plaintiff to stop managing the patient's case although this was part of Plaintiff's job responsibilities.

22. Plaintiff was terminated around March 15, 2011.

23. Ms. Valenzuela told Plaintiff she was terminated because her employment "wasn't working out". Plaintiff asked for a specific reason for the termination, but Ms. Valenzuela told Plaintiff she wasn't required to provide a reason. Later in the day Ms. Valenzuela told Plaintiff she was terminated for undermining a physician.

24. As a direct result of Defendant's conduct, the Plaintiff has suffered, and continues to suffer, lost wages (including back, present and front pay along with the value of benefits associated with such wages) and emotional distress/dignitary harm symptoms including sadness, frustration, anxiety, embarrassment and similar unpleasant emotions.

25. Motivating and/or significant factors in the decision to terminate the Plaintiff include her race and complaints of race discrimination and/or her complaints of improper care Defendants were providing to a patient under their care. At the least these factors were part of a mixture of motives such that Plaintiff is protected under the mixed motive doctrine.

## COUNT I

Plaintiff incorporates the above allegations and further pleads as follows:

26. Discrimination on the basis of race and retaliation for complaining of such discrimination is contrary to 42 U.S.C. §1981, Title VII, the Oklahoma Anti-Discrimination Act and Oklahoma's clearly established public policy as set out in the ***Burk/Saint/Shirazi*** doctrine.

27. Under this Count Plaintiff is entitled to compensation for her lost wages (past, present and future including the value of benefits associated with such wages), emotional distress/dignitary harm damages, attorney fees and costs.

28. Because the actions of the Defendants were either in willful violation of Plaintiff's protected rights or in reckless disregard of such rights, Plaintiff is entitled to an award of punitive damages against Defendants.

## COUNT II

For Plaintiff's second cause of action she incorporates the allegations set forth above and further provides that:

29. Oklahoma's clearly established public policy imposes a duty on nurses to ensure the safe and proper treatment of patients. Such public policy is set out in the following legal sources (non-exhaustive): 59 O.S. § 567.8(B)(3), (8) (providing for the suspension or discipline of a nurse who "[f]ails to adequately care for patients" or "[i]s guilty of any act that jeopardizes a patient's life, health or safety . . . ."); OAC 485:10-11-1(b)(3)(I) (discussing "unprofessional conduct" including "discriminating in the rendering of nursing services or patient care assistance."); OAC485:10-11-1(b)(4)(B),(G) (prohibiting conduct "which jeopardizes a patient's life, health or safety" including failing to report the unsafe or illegal practice of any person who is providing nursing or patient care); and 59 O.S. § 567.9 (criminalizing any violation of the Nursing Practice Act)

30. A significant factor in the decision to terminate the Plaintiff was her complaints of improper care being given to one of the Defendant's patients.

31. Defendants' actions were either willful and malicious or, at the least, in reckless disregard of Plaintiff's rights such that she is entitled to punitive damages in addition to lost wages (including front pay), dignitary harm damages and punitive damages.

**WHEREFORE**, Plaintiff prays that she be granted judgment in her favor and against the Defendants on all of her claims and that this Court grant all available compensatory damages, punitive damages, costs, attorney's fees and any other legal or equitable relief allowed by law.

**RESPECTFULLY SUBMITTED THIS 18th DAY OF JUNE, 2012.**

s/ Amber L. Hurst
Mark Hammons OBA # 3784
Amber L. Hurst, OBA #21231
HAMMONS, GOWENS, HURST & ASSOCIATES
325 Dean A. McGee Avenue
Oklahoma City, Oklahoma 73102
Telephone: (405) 235-6100
Facsimile: (405) 235-6111
Amberh@hammonslaw.com

*Attorneys for Plaintiff*
*Jury Trial Demanded*
*Attorney Lien Claimed*

## CERTIFICATE OF SERVICE

A true copy of the foregoing was filed and served by use of this Court's ECF system of filing and service to the opposing counsel below listed on this 18th day of JUNE, 2012.

R. Charles Wilkin, III, OBA #18491
Audra K. Hamilton, OBA #17872
Glass Wilkin, PC
1515 South Utica Avenue, Suite 250
Tulsa, Oklahoma 74104
Telephone: (918) 582-7100
Facsimile: (918) 582-7166
audrah@glasswilkin.com
cwilkin@glasswilkin.com

s/ Amber L. Hurst