IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OKLAHOMA
Case No.:  12-cv-109-JED-FHM


TAMMIE ROBINSON

Plaintiff

vs.

ST. JOHN MEDICAL CENTER, INC
ST. JOHN HEALTH SYSTEM, INC.

Defendants

---

## DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

R. Charles Wilkin III, OBA No. 18491
Audra K. Hamilton, OBA No. 17872
Wilkin/McMurray PLLC
1515 S. Utica Ave., Suite 200
Tulsa, Oklahoma 74104
(918) 743-3060 - Telephone
(918) 582-7166 – Telecopier

ATTORNEYS FOR DEFENDANTS,
ST. JOHN MEDICAL CENTER, INC.
ST. JOHN HEALTH SYSTEM, INC.

Defendants St. John Medical Center, Inc. and St. John Health System, Inc. (collectively "**St. John**" or "**Defendants**") file their Reply to Plaintiff's Response (Dkt. #109) to Defendants' Motion for Summary Judgment (Dkt. #76), and for their Reply, state as follows:

## ARGUMENT AND AUTHORITY

A.     **Plaintiff Failed to Provide Sufficient Evidence to Demonstrate that a Reasonable Jury Could Find an Inference of Discrimination in Plaintiff's Termination.**

Plaintiff asserts that Defendants used the incorrect legal burden for the *prima facie* case in an employment discrimination case, arguing the standard in *Barlow v. C.R. England, Inc.*, 703 F.3d 497, 505 (10th Cir. 2012) is reserved for cases "where the employer claims the job plaintiff held no longer exists or in other unusual cases." Pl's Resp. at p. 14. However, *Barlow* was decided less than one year ago, remains good law with no negative references, and was based neither upon unusual facts nor that the plaintiff's job no longer existed. *See id.* at 505.

The Tenth Circuit acknowledged it has treated circumstances suggestive of discrimination as an element of the *prima facie* case and at times in the pretext inquiry. *See Luke v. Hosp. Shared Servs.*, 513 Fed. Appx. 763, 766 (10th Cir. 2013) (unpublished) (Ex. 14) (citing *Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1173 n.5 (10th Cir. 2005)). As in the *Luke* case, however, this Court need not address the proper place for the "inference of discrimination" standard, as Plaintiff's evidence fails to establish pretext.

St. John identified several reasons for Plaintiff's termination. Namely, six physicians and one nurse from different treatment specialties in the hospital complained that Plaintiff had disrupted the physician-patient relationship and interfered with patient care, by:

(1) Contacting a sickle cell facility in Texas without a request for a consult by the attending physician;

(2) Asking for a social worker to check on transportation for the patient to see a hematologist in Oklahoma City, without order by the attending physician;

1

(3) Consulting with an infectious disease without an order from the attending physician;

(4) Most egregiously, speaking directly to the patient and asking if she would be willing to have a PCA pump for her pain, which specifically contradicted the recommendations of the Palliative Care Team.

In order to overcome this evidence, the Plaintiff "must proffer evidence that shows ***each*** of the employer's justifications are pretextual." *Tyler v. RE/MAX Mountain States, Inc.,* 232 F.3d 808, 814 (10th Cir. 2000) (emphasis added). Not only has the Plaintiff failed to provide such evidence, ***she has admitted that she performed all of these actions***.[1] Furthermore, contrary to Plaintiff's statement, this evidence is entitled to additional weight, as Sammye Valenzuela was the person who hired Plaintiff into the Case Management RN position in late 2010, and the person who decided to terminate Plaintiff in March of 2011.  *See* Defs' MSJ at UF ¶¶ 2, 29 (undisputed by Plaintiff); *Antonio v. Sygma Network, Inc.,* 458 F.3d 1177, 1183 (10th Cir. 2006).

The only arguments by Plaintiff to overcome the undisputed reasons for her termination are the following: (1) there is no rule addressing the Plaintiff's specific actions; (2) Plaintiff did not sign notes that Valenzuela took after prior counseling of Plaintiff; (3) Defendants deny Plaintiff reported any discrimination; (4) Plaintiff was not told of the charges against her; and (5) claims that other Caucasian employees were not terminated for infraction. *See* Plf's Resp. at pp. 20-21. These allegations are both belied by the undisputed facts and insufficient as a matter of law to establish pretext.

---

[1]      *Compare* Defs' MSJ, UF ¶¶ 14-17 *with* Pl's Resp., at RDF ¶¶ 14-17. Plaintiff admits these actions, but complains ***she*** does not believe they were wrong. However,"[i]t is the manager's perception of the employee's performance that is relevant, not the plaintiff's subjective evaluation of … performance." *Officer v. Sedgwick Cnty*, 226 Fed. Appx. 783, 795 (10th Cir. 2007) (unpublished) (quoting *Furr v. Seagate*, 82 F.3d 980, 988 (10th Cir. 1996)) (Ex.15).

*(1) Plaintiff's claim that there is no rule addressing her behavior*

Plaintiff has asserted several facts that are not clear as to their relevance, but her argument appears to be this: because there is no specific rule that states, "A Case Management Nurse shall not interfere with the physicians' and Palliative Care Team's recommended treatment for the patient or interfere with the physician-patient relationship," she cannot be terminated for actions that six physicians and one nurse reported was disruptive to patient care.

Aside from the absurdity of Plaintiff's implications, Plaintiff fails to mention that the Progressive Discipline Policy ***does*** specifically provide that "some offenses may be so serious that they warrant skipping steps of the formal disciplinary process up to termination. The list of Unsatisfactory Behaviors … are intended to serve as guidelines to the progression of the informal and formal processes and do not include all possible offenses." Pl's Ex. 13, at 318. It further provides that "conduct detrimental to job performance or patient care" is an offense that warrants immediate termination. *Id.* at 333, ¶ 3.42. However, even were these specific provisions not applicable to Plaintiff's situation, mere absences of specific work rules are not sufficient to show the substantive reasons given by the employer for its employment decision were pretextual. *See Berry v. T-Mobile USA, Inc.*, 490 F.3d 1211, 1222 (10th Cir. 2007) (citation omitted).

*(2) Plaintiff's allegation that she did not know about or sign Valenzuela's notes of prior counseling*

Defendants have never relied upon the coaching that Valenzuela provided Plaintiff in February of 2011 (Pl's Ex. 11) as grounds for her termination.  It is, therefore, irrelevant to the question of whether the grounds for Plaintiff's termination are a pretext for race discrimination. Furthermore, Plaintiff has identified no policy that states that Defendants must have employees sign all informal notes that supervisors make regarding daily interactions with employees.

With regard to the allegation that Plaintiff did not sign the final form detailing her termination, see *Berry*, 490 F.3d at 1222 (mere fact employer failed to follow procedures is not sufficient proof of pretext). Furthermore, it is clear from the evidence that Plaintiff submitted in her Response that Defendants failed to obtain signatures on forms from white employees as well. *See* Pl's Ex. 23 (discipline of J.E.). This cannot, therefore, be evidence of pretext for discrimination. As the Tenth Circuit has noted, "[a] plaintiff cannot pick and choose a person [she] perceives is a valid comparator who was allegedly treated more favorably, and then completely ignore a significant group of comparators were treated equally or less favorably than [she]." *English v. Colorado Dep't of Corr.*, 248 F.3d 1002, 1011-12 (10th Cir. 2001) (quotations omitted).

(3) *Defendants' denial of Plaintiff's alleged reports of discrimination*

Plaintiff's next allegation is that because Defendants deny Plaintiff complained of race discrimination, "it must be assumed the jury will believe the Plaintiff, [and] the denial creates an inference of pretext" sufficient to cast doubt on all of the reasons that Plaintiff was terminated (actions to which Plaintiff has admitted). Pl's Resp. at p. 20. According to Plaintiff's argument, any time an employee says that she was fired because of race and her employer disagrees, an employee has sufficient evidence of pretext. Were her assertion an accurate statement of the law, no employer would ever receive summary judgment, as there is always a dispute whether a plaintiff was terminated because of discriminatory intent.

The only case cited by Plaintiff for her bald assertion is *Barefield v. Bd. Of Trs.*, 500 F. Supp.2d 1244, 1268 (E.D. Cal. 2007). In this case—never cited as precedent by any court in the Tenth Circuit—an employer claimed it did not know an applicant's race, despite evidence in her résumé indicating that she was black. There was, therefore, evidence from which a jury could

infer that the employer was lying about its assertions for the adverse employment action *other than* the employee's word versus the employer's word, a situation clearly not evident here. Even were the case precedential, Plaintiff has no similar facts.

      (4) *Plaintiff's allegation she was not told of the charges against her*

This allegation is patently unsupported by the undisputed facts. To the contrary, the Plaintiff was present—which she admits—for the meeting among Valenzeula, and Drs. Mohammad, Duncan-Azadi, and Little, in which she was informed of the physicians' problems with her actions. UF ¶¶ 18-21; Pl's Resp. p.2 (admitting being present for the complaints).

      (5) *Plaintiff's claims that other Caucasian employees were not terminated for infractions*

Plaintiff's final argument for pretext is that similarly-situated white employees were not terminated for infractions. The Tenth Circuit recently re-iterated the standard for evaluating pretext for such an allegation: "In this circuit, we consider individuals to be similarly situated 'when they deal with the same supervisor, are subjected to the same standards governing performance evaluation and discipline, and have engaged in conduct of comparable seriousness.'" *Hysten v. BNSF Ry Co.*, 415 Fed. Appx. 897, 907 (10th Cir. 2011)(unpublished) (Ex. 16) (quoting *EEOC v. PVNF*, 487 F.3d 790 (10th Cir. 2007)). The Plaintiff has the burden of producing evidence that the employees are similarly situated. *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1121 n.4 (10th Cir. 2007). The Tenth Circuit has further cautioned,

> Not every difference in treatment, of course, will establish a discriminatory intent. Title VII does *not* make unexplained differences in treatment per se illegal nor does it make inconsistent or irrational employment practices illegal. It prohibits only intentional discrimination *based upon* an employee's protected class characteristics. Human relationships are inherently complex. Large employers must deal with a multitude of employment decisions, involving different employees, different supervisors, different time periods, and an incredible array of facts that will inevitably differ even among seemingly similar situations....

*Kendrick v. Penske Transp. Servs.,* 220 F.3d 1220, 1232 (10th Cir. 2000) (emphasis in original).

With those standards in mind, it is apparent that Plaintiff has not met her burden. First, the Plaintiff's job was RN Case Manager. However, all employees identified by Plaintiff except JH and JE were Social Worker Case Managers, and Plaintiff has not presented any evidence that these individuals were subject to the same work standards as RNs. *See* Pl's Ex. 18 at 3594 ("as the patient's assigned Social Worker"); Pl's Ex. 19 at 3869 ("as the patient's assigned Social Worker"); Pl's Ex. 26, at 2964 (Social Service/Case Management).

Second, Plaintiff has not demonstrated that their conduct was of "comparable seriousness" to hers (acting outside of her scope of practice, interference with the physician-patient relationship, and conduct that undermined the treatment team's recommendations, as complained by seven health care providers). Even more, in some cases the employees were given the same punishment as Plaintiff, thus contradicting her claims of pretext:

(a)    **JM and PE** were accused of looking at patient charts to whom they were not assigned. Plaintiff alleges that this is a HIPAA violation that is of the same seriousness as the Plaintiff's behavior. However, (1) Plaintiff provided no determination that they violated HIPAA, or (2) that any patients were put at risk, unlike the Plaintiff. In addition, the violations occurred in 2008, three years prior to Plaintiff's termination. *See Hysten*, 415 Fed. Appx. at 909 (Ex.16). Furthermore, the Progressive Disciplinary Policy (Pl's Ex. 13) states that HIPAA violations may result in ***any*** level of discipline from coaching to termination (*id. at* 334, at 3.47), unlike Plaintiff's "conduct detrimental to … patient care," which results in termination (*id.* at 333, at 3.42). Finally both JM and PE received the highest level of discipline short of termination.[2]

(b)    **PE** was accused of poor job performance. However, there is no indication that PE's actions put any patient at risk or interfered with the physician-patient relationship.

---

[2]    Plaintiff's citation to Mary Martin's deposition to support her case is not admissible. Martin did not supervise any of the case managers. *See Kendrick*, 220 F.3d at 1232 ("similarly situated" means "same supervisor"). Also, the transcript to which Plaintiff cites demonstrates that she was asked questions in the hypothetical, without any reference to the specific facts at issue. Therefore, she had no foundation to answer the question, provided speculative responses, and is not qualified to provide an answer. Fed. R. Evid. 602.

(c)      **JH** was terminated for being unable "to follow through with assignments and/or tasks she was given" and not being able to "remember facts about a patient 30 minutes from when it was previously discussed." Pl's Ex. 22. Even though there was no allegation that JH undermined the physician-patient relationship as Plaintiff had, nor was there evidence of complaints by six physicians, JH was terminated, the same treatment received by Plaintiff.

(d)      **JE** did not arrange for follow-up care for two patients. Unlike the Plaintiff, there is no evidence of undermining physician-patient relations or providing information to a patient in conflict with physician orders. Furthermore, there was a dispute as to whether he had received the orders at issue, unlike the Plaintiff, who has admitted to the behavior for which she was accused. Pl's Ex. 23.

(e)      With **RM**, Plaintiff's evidence undermines, rather than supports, her claim of pretext. RM changed a physician's order for a specific hospice care, which was reported to Valenzuela on 8/26/2010. Unlike the Plaintiff, who was allowed to continue working after the initial complaints against her, RM was sent home. On 8/30/2010, RM was terminated "for improper performance of duty, including malpractice or other acts detrimental to patient/customer," the same as Plaintiff. Pl's Ex. 26, at 2965. Like Plaintiff, who was terminated 4 days after initial complaints, RM was terminated 4 days after complaints. Thus, Plaintiff was treated exactly the same as RM.  *See English*, 248 F.3d at 1011-12.

None of the Plaintiff's evidence supports a claim of pretext. Her only complaint is that she thinks it did not warrant her termination. However, "***[a] company must be allowed to exercise its judgment in determining how severely it will discipline an employee for different types of conduct. Our role is to prevent unlawful hiring practices, not to act as a super personnel department that second guesses employers' business judgments.***" Kendrick, 220 F.3d at 1232 (emphasis added).

**B.      Plaintiff Failed to Establish Either a *Prima Facie* Case of Retaliation or Pretext.**

Plaintiff misunderstands the grounds for Defendant's argument on Plaintiff's *prima facie* case. Defendants agree with the Plaintiff's citation to *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001), cited by the Tenth Circuit in *Robinson v. Cavalry Portfolio Servs.*, 365 Fed. Appx 104 (2010). Like the *Robinson* case, *Breeden* involved a single, isolated incident. The Supreme Court found that, in order for a retaliation claim to be actionable, it must be ***objectively***

*reasonable*, and "[n]o reasonable person could have believed that the single incident recounted above violated Title VII's standard." *Breeden,* 532 U.S. at 271. For the reasons stated in Defendants' Motion for Summary Judgment, Plaintiff's alleged complaints cannot, under any interpretation, be considered racial harassment from an objectively reasonable standpoint.

Plaintiff cites to *AMTRAK v. Morgan*, 536 U.S. 101, 115 (2002), for the proposition that harassment is based upon "the cumulative effect of individual acts." However, *Morgan* was addressing the timeliness of a harassment claim, ***not its objective reasonableness***. Similar distinctions exist for *Burlington Indus. v. Ellerth,* 524 U.S. 742, 764 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775, 806 (1998). In fact, Plaintiff has cited no authority that supports the proposition she is implying: that a single act that ***cannot objectively be interpreted as discrimination or harassment*** can give rise to a retaliation complaint.

Furthermore, Plaintiff's arguments regarding causation are inapplicable. On June 24, 2013, the United States Supreme Court issued a decision finding that a Plaintiff in a retaliation case must prove that she ***would not have been fired but for the unlawful retaliation***. *University of Texas Southwest Medical Center v. Nassar*, 570 U.S. __, 133 S. Ct. 2517 (2013).  Plaintiff cannot meet this heightened burden, as the undisputed facts were that Plaintiff was terminated for her actions relating to the Sickle Cell Patient.

Even were Plaintiff able to establish a *prima facie* case of retaliation, she cannot establish that the legitimate, non-retaliatory reasons set forth by Defendants were pretext for retaliation, for the reasons previously set forth in subsection A, *supra*.

**C.    Plaintiff Has Failed to Establish a Public Policy Tort Claim as a Matter of Law.**

In Plaintiff's Response, she alleges that the report that she made that triggered a public policy claim was that one doctor stated that the patient did not "warm their hearts," and that she

8

need not prove actual risk of harm to the patient to survive summary judgment.  Pl's Resp., at pp. 23-24. However, not every complaint made by an employee is actionable as a *Burk* tort. As noted in cases cited by Plaintiff and Defendant, the Plaintiff must identify a "***clear mandate*** of public policy *as articulated by constitutional, statutory, or decisional law*" that was violated by the complaint. *Burk v. K-Mart*, 1989 OK 22, ¶ 19, 770 P.2d 24, 29 (emphasis added). *See also* Pl's Resp., at pp. 22-23.

Plaintiff identified statutes and regulations Okla. Stat. tit. 59, §§ 567.8(B)(3) and (8), and OAC §§ 485.10-11-1(b)(3)(I), (b)(4)(B), and (b)(4)(G), and it is these statutory and regulatory sections *identified by Plaintiff* for her public policy claim *that require proof of actual risk of harm*. *See id.*[3]

The Plaintiff has no evidence that she failed to adequately care for the patient, nor did anyone ask her to perform an act that was below the minimum standards of nursing practice. UF 44, admitted by Plaintiff. Thus, Plaintiff is left solely with the allegation that the *the physicians* put the patient in actual risk of harm, which she claims she was required to report.[4]

Plaintiff alleges that she was only required to establish a good faith belief of such risk of harm, and therefore does not need to present an expert who can testify as to the actual medical risk or standard of care that was being violated. However, as noted by the Plaintiff, the standard is not one just of good faith; it is the *objective reasonableness* of her alleged complaint. Pl's Resp., at p. 24. The jury has no ability to evaluate the objective reasonableness of her complaint that the patient was put at risk of harm by the physicians' actions, without expert medical

---

[3]     This fact also renders irrelevant her citation to *Darrow v. Integris Health*. In that case, unlike this one, the Plaintiff identified facts that, if true, were unquestionable violations of a specific statute. 2008 OK 1, n.49, 176 P.3d 1204, 1218.  *Darrow* explicitly does *not* stand for the proposition that every complaint of unsafe activity creates a *Burk* tort. *Id.* ¶ 20, at 1216.

[4]     Plaintiff also cites to OAS § 485:10-11-1(b)(3)(I). It is inapplicable, as there is absolutely no evidence that any nurse discriminated in the rendering of nursing care.

testimony to show **actual risk of harm**. *Turney v. Anspaugh*, 1978 OK 101, 581 P.2d 1301, 1307-08; *Darnaby v. Davis*, 2002 OK CIV APP 103, ¶ 26, 57 P.3d 100, 106. She has none.

Plaintiff's reliance upon *Gaines v. Comanche County Med. Hosp.*, 2006 OK 39, 143 P.3d 203, for the premise that she can testify as an expert in her case is groundless. That case involved a nurse testifying about **nursing standards**. In fact, the Oklahoma Supreme Court declared, "This case **does not involve a situation where a nurse is giving expert testimony against a physician**" and stated that its holding was in "a restricted and specific area" for "the unique facts presented." *Id.*, ¶¶ 26, 19, 143 P.3d at 211, 209 (emphasis added). Further, the Plaintiff has acknowledged that she is unqualified as an expert regarding this patient's illnesses and treatment.

Plaintiff has not one single piece of evidence that any physician acted below the standard of care or put the patient at risk of harm, other than her sheer, unqualified speculation that there were actions that "seemed clinically inappropriate." Pl's Resp., at p.5, ¶ 41.[5]  Her allegations are inadmissible. Fed. R. Evid. 602.  Thus, Plaintiff has no admissible evidence that she acted in any way that was protected by the statutes and regulations on which she relies. Her public policy claim must be dismissed.

### CONCLUSION

For the reasons set forth herein and in Defendants' Motion for Summary Judgment (Dkt. #76), Defendants request summary judgment be entered in their favor on all Plaintiff's claims.

---

[5]     Plaintiff misrepresented of the testimony of Dr. Schram regarding the patient's pain levels by leaving off his response to counsel's question. *See* Pl's Resp., at p. 4, ¶ 36. Dr. Schram actually contradicted the exact proposition set forth by Plaintiff on p. 4, ¶ 36: "I am reviewing my note from March 9th, 2011 and I have recorded that the patient complained ten out of ten pain **upon initial assessment**. Then when I suggested that we change her pain control  regimen to something more continuous and oral in anticipation of discharge and to prevent pain spikes, she refused to take her pain [sic].  She refused that, **stating that her pain was well controlled** . . ." Schram Depo., Ex. 17, hereto, at 31:22-32:13 (emphasis added).

*Respectfully submitted,*

By: */s/ Audra K. Hamilton*
      R. Charles Wilkin III, OBA No. 18491
      Audra K. Hamilton, OBA No. 17872
      Wilkin/McMurray PLLC
      1515 S. Utica Ave., Suite 200
      Tulsa, Oklahoma 74104
      (918) 743-3060 - Telephone
      (918) 582-7166 – Telecopier

      ATTORNEYS FOR DEFENDANTS,
      ST. JOHN MEDICAL CENTER, INC.
      ST. JOHN HEALTH SYSTEM, INC.

### CERTIFICATE OF SERVICE

I certify that on August 26, 2013, I electronically transmitted the foregoing document through the CM/ECF filing, to the following:

Mark Hammons
Amber L. Hurst
Christine Coleman
Hammons, Gowens, Hurst & Associates
325 Dean A. McGee Ave.
Oklahoma City, Oklahoma 73102
Attorneys for Plaintiff

      */s/ Audra K. Hamilton*