**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| TAMMIE ROBINSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 12-CV-109-JED-FHM |
| | ) | |
| 1.  ST. JOHN MEDICAL CENTER, INC., and | ) | |
| 2.  ST. JOHN HEALTH SYSTEM, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S SURREPLY IN OPPOSITION TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

**COMES NOW THE PLAINTIFF** and pursuant to this Court's Order shows this Court as

follows:

**I. - PLAINTIFF DID NOT VIOLATE ANY WRITTEN POLICIES**

In their Reply, Prop. A(1), p. 3 (Doc. 115), Defendants claim for the first time that Plaintiff

violated a written rule that justified immediate termination.  This assertion is factually unsupported

in defendants' reply and a jury can find it contrary to the sworn testimony of the decision-maker that

no written rule was violated:

> Q:     With respect to all of the reasons you have given me for the termination . . .
>        is there any written policy, rule, or procedure that prohibited Ms. Robinson
>        from engaging in the type of conduct she has been accused of engaging in?
> A:     Not to my knowledge as far as written.

Ex 1 Tr Valenzuela, p. 32, ln 21 to p. 34, ln 21 (quotation at pg. 33, ln 6-12).

The claim is also inferentially refuted because the written policies pertaining to termination

were not followed.  See **PF11** in Plaintiff's Opening Brief showing the policy requirements and

violations of those policies.

A jury could find this to be a material departure from Defendants' prior claims and further

evidence of pretext.  ***See Reeves v. Sanderson Plumbing Products, Inc.,*** 530 U.S. 133, 152 (2000)

(employer initially claimed plaintiff had "intentionally falsif[ied] company pay records [but] only

introduced evidence concerning the inaccuracy of their records, not their falsification."); ***Danville***

***v. Regional Lab Corp.,*** 292 F.3d 1246, 1249 n. 5 (10th Cir.2002)  (Pretext when employer changed

1

its explanation from "'no experience,' [to] 'more recent experience.'"); *EEOC v. BCI Coca-Cola Bottling Co.*, 450 F.3d 476, 491 (Pretext because "[r]ecognizing the weakness of the original explanation, [the employer] has refined its position") and *Plotke v. White,* 405 F.3d 1092, 1103 (10th Cir. 2005) (pretext when the defendant "subsequently enhanced his reasons")

## II. - The Case Managers Are Proper Comparables

Defendants Reply (Doc. 115), Prop. A(2), pg. 4,  and Prop. A(5), pg 5 & 7 argues that the co-workers identified by Plaintiff were not valid comparators and cannot be used to show pretext.

Defendants do not argue that Case Managers J.H and and J.E. were not valid comparators. Response, pg. 6 ("However, all employees identified by Plaintiff except JH and JE were Social Worker Case Managers, and Plaintiff has not presented any evidence that these individuals were subject to the same work standards as RNs".  J.H., who was terminated only after receiving discipline and given six weeks to improve her performance, was an RN Case Manager, identical to Plaintiff's position. Plf's Response, Doc. 109, PF18(C), pg. 11; Ex 2 (Job Description, showing J.H. has "RN Case Manager" (Bates 1781-1785, job description at 1781, J.H. Signature at 1785, full name redacted).   More favorable treatment of one comparator is sufficient to show pretext for summary judgment purposes. *See Strickland v. UPS*, 2009 U.S. App. LEXIS 3654, 16-17 (10th Cir. 2009):

> A sex discrimination claim does not fail simply because an employer does not discriminate against every member of the plaintiff's sex.  *Pitre v. W. Elec. Co.*, 843 F.2d 1262, 1272-73 (10th Cir. 1988). While Harper's treatment might be relevant to the issue of UPS's intent, it does not resolve the issue as a matter of law. Paul Deaton was similarly situated to Strickland and had worse sales numbers, yet he was not subject to the same requirements and oversight as Strickland.  From this evidence the jury could have found that Strickland was subjected to sex discrimination notwithstanding Harper's testimony that Roten did not treat her differently. The district court erred, therefore, in granting judgment as a matter of law to UPS on the Title VII sex discrimination claims on that basis.

While it is sufficient that Plaintiff identify only one comparator – in this case the other RN Case Manager – the other employees identified are also valid comparators, as discussed below.

To be admissible is it only required that the employees have the same supervisor[1] and that the offenses be of similar, but not identical, seriousness.[2]  Both requirements are satisfied here.  All of the comparators were Case Managers, worked in the department of "Case Management" and were supervised by Valanzuela, the Director of Case Management. Plf's Resp, Doc. 109, PF18, pg. 11. All of the comparators were Case Managers, like the Plaintiff, and worked in the same department, that of Case Management and were supervised by Valenzuela, the Director of Case Management.  Plf Resp, Doc. 109, PF18.  The disciplinary action forms given to the Case Managers do not differentiate between job titles, but identify employees in terms of supervisor (Valenzuela) and Department, and *all of the Case Managers* were identical in this respect.  Plf's Resp Exs 18-20, 22 (at Bates 1780), 23-25 (all filed under seal, all showing supervised by Valenzuela and within the Case Management department).  Defendants' "Progressive Disciplinary Policy" provides that discipline problems are separated by severity and may "vary from *department to department*" and there is no separation based on specific job position.  Ex 13 to Plf's Response at Bates 328 (emphasis supplied).  In such case, comparability is a fact question for the jury– not for summary judgment.  *Brown v. Parker-Hannifin Corp*., 746 F.2d 1407, 1412-1413 (10th Cir. 1984):

> **Although the district court found that the two situations were 'not that comparable,' that determination was one of a factual nature that should not have been made as a basis for summary judgment**. With respect to the disparity of treatment, plaintiff presented evidence that similarities existed between the two situations. Both she and the other employee committed a similar work infraction by refusing to obey orders on the job. While the non-German employee disobeyed a fellow employee, she also ultimately defied her supervisor when he said she should re-do the work as the fellow employee requested; this was arguably an example of similar insubordination. Sufficient evidence of similarity was presented to at least raise a factual question whether disparate treatment may have occurred when plaintiff was discharged and the non-German employee was merely suspended. Without expressing any view on the merits of the issue, we must agree that this was essentially a factual dispute. . . .

---

[1] *Aramburu v. Boeing Co*., 112 F.3d 1398, 1404 (10th Cir. 1997), although there are exceptions to this rule.

[2] *English v. Colo. Dept. Of Corr.,* 248 F.3d 1002, 1011 (10th Cir.2001) ("When comparing the relative treatment of similarly situated minority and non-minority employees, the comparison need not be based on identical violations of identical work rules; however, the violations must be of comparable seriousness.")

*Brown v. Parker-Hannifin Corp*., 746 F.2d 1407, 1412-13 (10th Cir. 1984) (emphasis by the Court).

Thus, Plaintiff's comparisons cannot be excluded from consideration.

### III. - Defendants Have Changed Their Position On Coaching

Defendants now claim that they have "never relied upon the coaching that Valenzuela provided Plaintiff in February of 2011 . . . as grounds for her termination."). Reply (Doc. 115), pg. 3, Prop. A(2). This is contrary to Defendants' statement to the EEOC that Plaintiff regarding the reasons for Plaintiff's termination. Ex 3 at EEOC ROB 144 ("Sammye Velanzuela, counseled [Plaintiff] to not 'cross boundaries'[.]"), at EEOC ROB 146 (incorporating the statements "set out above" in the position statement), and Plf's Resp Ex 11 (Valenzuela's Feb. 2011 notes attached to the EEOC statement.); Plf's Resp, PF10. Velanezuela testified she gave the February 2011 notes to Kelly Brown and that Ms. Brown relied on these notes to recommend termination. Ex 1 Tr Valanezuela, pg. 63, ln 4 to pg. 64, ln 23. Defendants' now claim that it did not use the February 2011 counsel is a change in its position taken at the EEOC stage and during Valenzuela's deposition and this change again represents some evidence of pretext. See citations in Prop. I, above and *Danville v. Regional Lab Corp*.,292 F.3d 1246, 1249 n. 5 (10th Cir.2002) (Defendant's argument "represents slippage from its original position."); *EEOC v. BCI Coca-Cola Bottling Co.*, 450 F.3d 476, 491 (Pretext because "[r]ecognizing the weakness of the original explanation, [the employer] has refined its position").

**WHEREFORE,** this is not only a disputed fact but itself further evidence of pretext.

### IV. - Ms. Martin's Testimony Is Admissible

Defendants' argue that Mary Martin's testimony is inadmissible under Fed. R. Evid. 602. Reply (Doc. 115), pg. 6, fn 2. Rule 602 only requires "that the witness has personal knowledge of the matter" which may be shown by "the witness' own testimony." *Id.* "[P]ersonal knowledge. . . may consist of what the witness thinks he [or she] knows from personal perception." Advisory Committee Note, 1972 Proposed Rule 602. "Rule 602. . . does not require that the witness's knowledge be positive or rise to the level of absolute certainty." 3 **Weinstein's Federal Evidence, 2d**, § 602.03[2][a] (quoting *M.C.A.F.B. Fed. Credit Union v. Cumis Ins. Soc'y*, 681 F.2d 930,

4

932-33 (4th Cir.1982), alterations by the treatise).  Thus, employees familiar with the operation of a business may offer testimony, even if considered an opinion, "rationally based on. . . knowledge, as a personal observer, of [an] operation" even if the witness was not an observer to the particular matter in question.  **Weinstein's, supra**, § 602.04[4], p. 602-24.  Here Ms. Martin is a supervisor and charged with understanding and enforcing the disciplinary policies and is familiar with what types of conduct are more or less severe than others.  Ex 4 Tr Martin, pg. 8, ln 16-21, pg. 67, ln 23 to pg. 70, ln 12.

      **WHEREFORE**, this is sufficient for Rule 602 purposes.

### V. - Plaintiff's Testimony Is Competent Evidence

      Defendants' argue that Plaintiff is not competent to testify to the sufficiency of her own performance.  Doc. 115, pg. 2, fn 1.  This is clearly incorrect.  First, Plaintiff's assessment of her own performance is clearly sufficient to establish the second prong of the prima facie case.  ***Bullington v. United Air Lines, Inc.,*** 186 F.3d 1301, 1316 n.11 (10th Cir. 1999) (""At the prima facie stage, the court need only conclude that the plaintiff has shown, through credible evidence, **including her own testimony**, that she was minimally qualified for the position she sought, even if the defendant disputes that evidence." Emphasis supplied).  ***Accord Beaird v. Seagate Tech***., 145 F.3d 1159, 1166 n. 3 (10th Cir. 1998) ***cert. denied*** 525 U.S. 1054 (1998) (Plaintiff "insists that his work was satisfactory, which is sufficient to satisfy this element of the prima facie case").

      Further Plaintiff's testimony is admissible as substantive evidence.  ***Sanchez v. Vilsack***, 695 F.3d 1174 n. 4  (10th Cir. 2012):

> The Forest Service contends that the district court was not required to accept Sanchez' 'self-serving' testimony as true. We disagree.  So long as an affidavit is 'based upon personal knowledge and set[s] forth facts that would be admissible in evidence,' ***Hall v. Bellmon***, 935 F.2d 1106, 1111 (10th Cir. 1991), it is legally competent to oppose summary judgment, irrespective of its self-serving nature. ***See Williams v. Shields***, 77 F. App'x 501, 503 (10th Cir. 2003) (unpublished).

> While Plaintiff's opinion is not controlling, it is admissible evidence.

## VI. - Valenzuela's Denial Of Receiving A Discrimination Claim Is Irrelevant

Defendants' argue that the contradiction in testimony between Plaintiff's claim that she complained to Valenzuela of racial remarks and Valenzuela's denial of that complaint is irrelevant. Reply (Doc. 115), pg. 4-5, Prop. A(3).

To the contrary, denial of knowledge is recognized evidence of consciousness of guilt which, although deriving from criminal cases, applies civilly and in discrimination claims. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000) (citing to the false exculpatory testimony). Thus denial of knowledge is commonly recognized as substantive evidence of consciousness of guilty. *See United States v. Caldwell,* 560 F.3d 1202, 1208 (10th Cir. 2009) ("[T]he jury could also infer that his false denial of his knowledge. . . suggested his consciousness of guilt.") and, in discrimination cases, *Pardo-Kronemann v. Donovan*, 601 F.3d 599, 605 (D.C. Cir. 2010) (The "false denial of knowledge of the EEO complaints, could be interpreted by a reasonable jury" as evidence of discriminatory/retaliatory intent.)

The Tenth Circuit has recognized that "cover-up" evidence shows pretext. *Orr v. City of Albuquerque*, 531 F.3d 1210, 1216 n. 4 (10th Cir. 2008):

> . . . [A] reasonable jury could (though of course need not) view these facts as part of a post-hoc effort to cover up past discriminatory practices, or at least not informative of the Department's practices and policies prior to the filing of this lawsuit. *See Plotke v. White*, 405 F.3d 1092, 1103 (10th Cir. 2005) (holding that post-hoc reasons for an adverse employment decision constitute evidence of pretext); *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1093 (10th Cir. 2007); *see also Katz, supra*, 83 Notre Dame L. Rev. at 127-28 (noting that from 'the fact of a cover-up, the factfinder . . . might conclude that the employer lied to cover up a discriminatory decision').

**WHEREFORE**, this is relevant evidence of pretext.

## VII. - "But For" Causation Does Not Apply To The State Law Claims

*Tate v. Browning-Ferris, Inc.*, 1992 OK 72, 833 P.2d 1218, 1230 n. 68 explaining the significant factor as the general standard for *Burk* torts. *Medlock v. UPS, Inc.*, 608 F.3d 1185, 1194 n. 7 (10th Cir.2010) explains that state law burdens apply when the claims are brought in federal court and particularly stated that the significant factor test applies to *Burk* torts. This is the proof factor that has also been used in statutorily based retaliation claims such as worker's compensation

retaliation, *Estrada v. Port City Props*., 2011 OK 30, ¶16, 258 P.3d 495, 502, and jury duty retaliation. *Brown v. MFC Fin. Co.*, 1992 OK CIV APP 54, 838 P.2d 524, 527.

## VIII. - Defendants Misapply *Gaines*

Defendants argue that *Gaines v. Comanche County Med. Hosp.*, 2006 OK 39, 143 P.3d 203 is inapplicable because it did not involve a nurse's testimony against a physician. Reply (Doc. 115), Prop. (C), pg. 9-10. In *Gaines*, the Court noted but "express[ed] no opinion on what appears to be a trend towards allowing a nurse's testimony to be treated as an expert in an ever increasing number of areas." *Id.*, ¶ 19, 143 P.3d at 209 & n. 16. The Oklahoma Supreme Court has also noted that expert testimony, though usually required, is not always necessary to a hospital negligence claim.[3]

Respectfully, however, Defendants' arguments miss the point. Plaintiff is not testifying as an expert witness, nor is this an action against a physician. Defendants' have failed to point to any case holding that a whistleblower's report has to be sufficient to prove a medical malpractice claim in order to be protected. Rather, Oklahoma's public policy test has always been based merely on the employee's good faith. *Darrow v. Integris Health, Inc*., 2008 OK 1, ¶15, 176 P.3d 1204, 1214 (Oklahoma protects "'whistleblowing' activity geared toward the good-faith reporting of infractions by the employer or co-employees of rules, regulations or the law pertaining to the public health, safety or general welfare." Quotation omitted); *Hayes v. Eateries, Inc*., 1995 OK 108, 905 P.2d 778, 787 n. 7 (Oklahoma's whistleblowing protection extends to the "internal or external good faith reporting of employer or co-employee infractions of rules, regulations or the law pertaining to the

---

[3] *Johnson v. Hillcrest Health Ctr, Inc.*, 2003 OK 16, P 13, 70 P.3d 811, 816-17: Hospitals have an implied obligation or duty to exercise ordinary care in the delivery of professional services to their patients. A hospital's duty requires such care and protection to a patient as the patient's condition requires. Whether such requirements have been met presents an issue of fact to be determined by the jury. The applicable standard of care and deviations therefrom causing an injury are ordinarily established by expert testimony, unless the common knowledge of lay persons would enable a jury to conclude the applicable standard of care and whether its breach caused the injury.

Presumably lack of knowledge about a patient's condition by the treating staff, lack of compassion and refusal to look at proffered medical literature are the sorts of thing falling within "the common knowledge of lay persons".

public health, safety or general welfare").

     ***Darrow*** should dispel Defendants' argument.  *Darrow* was an "administrative assistant and administrative coordinator" whose duties included "billing for Medicare reimbursement." ***Id.***, at ¶2, 176 P.3d at 1207 (emphasis by the Court deleted).  "On or about 2 March 2005 Darrow received an e-mail from the clinical manager of Samaritan Home Based Care.  It notified him of the death of an Integris patient and three (3) family members as a result of a home fire. Because Darrow was aware that some of the equipment used in home health care posed an increased risk of fire, he responded to the e-mail." ***Id.***, ¶ 3.

> That very day Darrow received conflicting information concerning the patient's age. Because age discrepancies can delay billing, he attempted to verify the patient's correct age by checking the source documents in the chart. In doing so, he noticed that the signature authorizing Integris' services appeared to be that of a minor grandchild of the patient who also died in the fire. According to Darrow, media reports about the fire included information inconsistent with that contained in Integris' documents. In addition to the age discrepancy, the news reports indicated the lack of smoke detectors and the use of non-breakaway security bars on windows at the patient's residence. This differed from the admitting nurse's initial evaluation of the home which noted 'no discrepancies' on the patient's initial intake form. * * * The admitting nurse's assessment of 'no discrepancies' meant there were no safety concerns in the home such as a lack of smoke detectors or the use of non-breakaway security bars.

***Id.***, ¶ 4,  176 P.3d at 1207-08 & n. 5.

> Darrow notified the company's Quality Assurance Supervisor about these problems. She indicated she would talk with his supervisor  when the latter returned to work later that week. Darrow's employment was terminated approximately five days later for an alleged HIPAA (Health Insurance Portability and Accountability Act of 1996) violation in the course of his review of the deceased patient's chart.

***Id.***, ¶5, 176 P.3d at 1208.

     This set out a sufficient basis for a ***Burk*** wrongful termination action.  There was no requirement to show that  Darrow was neither a CPA, a handwriting expert, Medicare expert nor a fire investigator, i.e. that he was an expert whose testimony could prove any of the concerns he reported.  All that was required was "good-faith reporting". ***Id.,*** ¶15, 176 P.3d at 1214.  What the court did emphasize was that Darrow's duties "**included billing for Medicare reimbursement**." ***Id.,*** ¶2, 176 P.3d at 1207 (emphasis by the Court).  This, of course, is the situation here where Plaintiff's duties included assuming "responsibility and accountability for individual knowledge,

skill", ensuring "consistent clinical standards of care and interven[ing] clinically as appropriate", proposing "alternative treatment. . .", "[m]odif[ying] or chang[ing] the plan as needed based on the evaluation of the effectiveness", "[p]articipat[ing] in the education of the health team members on current healthcare issues (clinical and economic). . .", "[a]ssur[ing] appropriate tests and treatments to the diagnosis are performed in a timely manner" , "[i]dentif[ying] and work[ing] to remove barriers that impede optimal patient care", "[e]valuating team members' performance. . .", "Actively seek[ing] innovative methods of learning information relevant to Case Management practice", "Actively participate[ing] in staff and physician education regarding case management, managed care. . .", among other duties and therefore she had personal knowledge of the matters being raised. Plf's Resp, PF16, pg. 8-9.

There is no requirement to prove that the Plaintiff is an expert nor that the underlying concern is proven true, let alone rises to the level of malpractice; the only obligation of the Plaintiff is to explain why her concerns were reasonable.  This is consistent with federal court precedent protecting reporting reasonable beliefs even if they are ultimately proven wrong.  *E.g. Crumpacker v. Kan. Dep't of Human Res*., 338 F.3d 1163, 1171 (10th Cir. 2003) ("This court [] has held that *an actual violation* is not required to maintain a retaliation claim under Title VII") (emphasis in original)).

**WHEREFORE,** Defendants' analysis is incorrect.

## CONCLUSION

The new assertions in Defendants' reply are not only factually disputed and legally incorrect, they offer (at least in some instances) further evidence of pretext supporting Plaintiff's proof, and demonstrating that summary judgment would be improper.

**RESPECTFULLY SUBMITTED THIS 19th DAY OF SEPTEMBER, 2013.**

HAMMONS, GOWENS, HURST
& ASSOCIATES

s/ Amber L. Hurst
Mark Hammons, OBA No. 3784
Amber L. Hurst, OBA No. 21231
325 Dean A. McGee Avenue
Oklahoma City, Oklahoma 73102
Telephone: (405) 235-6100
Facsimile: (405) 235-6111
Email: amberh@hammonslaw.com
Jury Trial Demanded
Attorney Lien Claimed
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

A true copy of the foregoing was filed and served by use of this Court's ECF system of filing and service to the opposing counsel below listed on this 19th day of September, 2013.

R. Charles Wilkin, III, OBA No. 18491
Audra K. Hamilton, OBA No. 17872
Wilkin, McMurray PLLC
1515 South Utica Avenue, Suite 200
Tulsa, Oklahoma 74103
Telephone: (918) 582-7100
Facsimile: (918) 582-7166
Email: ahamilton@wilkinmcmurray.com
        cwilkin@wilkinmcmurray.com
*Counsel for Defendant*

s/ Amber L. Hurst